David L. Paul State Commissioner of Savings and Loan Associations State Office Building, Room 324 201 East Colfax Avenue Denver, Colorado 80203
Dear Mr. Paul:
On October 5, 1979 you transmitted to this office a copy of a letter dated October 2, 1979, from the general counsel of the Federal Home Loan Bank Board concerning the proposed acquisition of Pioneer Savings and Loan Association ("Pioneer") and Mesa Verde Savings and Loan Association ("Mesa Verde") by Columbia Savings and Loan Association ("Columbia"). Pioneer, Mesa Verde and Columbia are all Colorado-chartered savings and loan associations. You have requested an attorney general's opinion regarding the questions posed in that letter.
Both acquisitions are structured in the same fashion. In each, a merger is contemplated between the association to be acquired and MCA Financial, Inc., a Colorado corporation which owns 100% of the issued and outstanding stock of Columbia. Each plan and agreement of merger then calls for an immediate contribution by MCA Financial, Inc. of all of the assets and liabilities of Mesa and Pioneer so acquired to Columbia. This form of merger is known as a triangular merger.
QUESTION PRESENTED AND CONCLUSION
The question presented is whether it is permissible under Colorado law for Columbia to acquire Mesa Verde and Pioneer through the device of a merger which is triangular in form rather than a direct two-party merger.
 The answer is that it is permissible under Colorado law for one savings and loan association to acquire another savings and loan association by means of a merger with the acquiring association's parent company followed by an immediate contribution of the assets and liabilities so acquired to the subsidiary acquiring association.
ANALYSIS
Section 11-41-121(2), C.R.S. 1973 sets forth the general authority for the merger of state chartered savings and loan associations in Colorado under the savings and loan association law. It provides as follows:
 Any two or more associations are authorized to merge and become incorporated in one body by transfer of all their assets and obligations upon such terms as set forth in an agreement of merger. The respective boards of directors of such associations, by a majority vote of each board, shall make or authorize to be made between such associations an agreement of merger.
The balance of section 11-41-121 deals with the procedure to be used in gaining approval of the merger from regulatory authorities and contains standard statutory merger language concerning the preservation of rights and obligations of the merged association.
The operative language of this section is the first sentence of subsection (2) which permits the merger "on such terms as are set forth in the agreement." This provides great latitude in structuring the agreement to suit the needs of the associations and their shareholders. There is no question that Columbia could merge directly with Pioneer and Mesa Verde. Such authority is explicit in the savings and loan association law. Likewise, there is no question that MCA Financial, Inc. could acquire all of the outstanding stock of Pioneer and Mesa Verde. No provision of the savings and loan association law restricts the transfer of stock of an association or regulates a change in control of a savings and loan association. The economic result of the proposed merger could clearly be accomplished directly under the savings and loan association law.
The only question then remaining is whether the form of the proposed transaction makes the transaction unlawful. The proposed form involved here is nothing more than using a third-party intermediary as title holder to the acquired association's assets and obligations for a fleeting moment. This form of the transaction is proposed to be used for reasons which do not involve state law. The parties to the transaction all agree that the two steps of the transaction will be taken contemporaneously, and at a single closing. There is nothing in the language of subsection (2) of 11-41-121 to indicate a requirement that the agreement of merger involve only two parties. So long as both steps involved in the transaction occur at virtually the same time, the three party transaction becomes the functional equivalent of a merger directly between the two associations. To assure that both steps are taken in such a fashion, the savings and loan commissioner may wish to condition his approval of the transaction on both steps being taken at virtually the same time. With that assurance, the triangular form of the transaction is unobjectionable, and is permitted under the provisions of section11-41-121.
The letter from the general counsel of the Federal Home Loan Bank Board also inquires whether if under federal law the insured status of the accounts of the merging association would terminate by virtue of its merger with MCA Financial, Inc., the merger would then violate section 11-41-121(7), C.R.S. 1973, which in part states:
 All of the rights and obligations of the merging associations shall remain unimpaired, and the (resulting) association, at the time of the taking effect of such merger, shall succeed to all of the rights and obligations and duties and liabilities of the merging associations.
Even if insurance of accounts terminated under such circumstances, insurance of accounts is a right belonging to the account holder which springs from a third party, namely the federal savings and loan insurance corporation, and not from either of the associations. All rights of the account holder as against the association would be preserved, even if insurance of accounts did terminate. Consequently, the quoted language of subsection (7) of section 11-41-121, C.R.S. 1973, would not indicate that no power to merge exists in this manner. If insurance of accounts were not available to the account holder after the merger, however, that fact would be an appropriate consideration for the commissioner in determining whether to approve such a merger pursuant to the provisions of subsection (3) of section 11-41-121, C.R.S. 1973. Such approval could be conditioned on the depositor's accounts being insured after the merger.
SUMMARY
To summarize, the proposed mergers are, in substance, mergers of two savings and loan associations which is permitted by section11-41-121, C.R.S. 1973.
Very truly yours,
 J.D. MacFARLANE Attorney General
CONSOLIDATION
C.R.S. 1973, 11-41-121
REGULATORY AGENCIES, DEPT. Savings Loan, Div. of
Savings and Loan associations may merge even if the stock and assets of the acquired company momentarily pass through a third company before acquisition by the acquiring company.